NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4229-11T2

IN THE MATTER OF THE
APPLICATION FOR A RETAIL
FIREARMS DEALER'S LICENSE
RENEWAL BY CAYUSE CORP.
LLC, T/A WILD WEST CITY

_____

| APPROVED FOR PUBLICATION |
| :---: |
| March 28, 2016 |
| APPELLATE DIVISION |

Submitted November 12, 2015 — Decided March 28, 2016

Before Judges Alvarez, Ostrer and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County.

Mary K. Benson, attorney for appellant Cayuse Corp. LLC, t/a Wild West City (Michael Stabile, on the pro se brief; Ms. Benson, on the reply brief).

Francis A. Koch, Sussex County Prosecutor, attorney for respondent State of New Jersey (Laura L. Nazzaro, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

This appeal involves the denial of an application for a retail firearms dealer license under N.J.S.A. 2C:58-2.  It requires us to clarify the procedure to be followed by trial judges considering applications under this statute, as well as the applicant's burden to prove entitlement to a license.

In this case, the judge denied the application after an ex parte proceeding. The applicant did not appear at this hearing, and there is no persuasive evidence the applicant received advance notice. The applicant was then permitted to "appeal" the denial in a hearing before the same judge. Over a year after the initial denial, the applicant was notified of the hearing, but he chose not to appear. The hearing took place in the applicant's absence, and the judge entered an order dismissing the "appeal" of the initial denial. The applicant appeals from that order.

We hold the court erred in proceeding ex parte. The offer of a plenary hearing did not cure that error. However, we also conclude an applicant bears the burden to establish that he has satisfied the eligibility requirements of N.J.S.A. 2C:58-2. Inasmuch as the applicant has not met that burden in an appropriate hearing, we reject his contention that he should automatically receive a license because of procedural infirmities. We also decline to order a new hearing, because the term of the license at issue has already expired. Therefore, we vacate the license denial, but do not remand for a hearing.

We discern the following facts from the record. Michael Stabile filed the application at issue in August 2010 on behalf of "Cayuse Corp. LLC." (Cayuse).[1] Stabile sought to renew retail firearms dealer's license number 2530, issued to "Western World, Inc. t/a Wild West City" (WWI), and transfer it to Cayuse. License 2530 was set to expire October 4, 2010, three years after it was issued.[2] "Wild West City" is the trade name of a Western theme park in Byram Township.

The State Police apparently forwarded the application to the Law Division on September 21, 2010. The record does not include a State Police investigation of the application. On September 28, 2010, an assistant Sussex County prosecutor wrote to the court that "the State objects to the renewal and/or continued issuance of a retail firearms' license to Michael Stabile and/or the Cayuse Corporation." The opposition was based on Stabile's involvement, as manager of Wild West City, in an accidental shooting at the park. On July 7, 2006, a juvenile actor employed by the park used live ammunition in his weapon

---

[1] We also use "Cayuse" to refer to "Cayuse, LLC," the limited liability company Stabile formed. "Cayuse Corp. LLC" appears to be a misnomer for "Cayuse, LLC," as there is no record evidence of the formation of an entity by the name "Cayuse Corp. LLC."

[2] See N.J.S.A. 2C:58-2(a) (retail dealer licenses are valid for three years).

during a skit, and shot and grievously injured another actor. Actors used real firearms in the skits, but were supposed to only load them with blanks.

The assistant prosecutor wrote, "The State has concluded that Mr. Stabile's recklessness in the handling and distribution of firearms caused the injury" to the actor. Stabile had been charged, in a June 2008 grand jury indictment, with thirteen offenses, including unlawful transfer of a firearm to a minor; facilitating possession of a handgun without a permit; aggravated assault; and violating a law intended to protect public safety. The same judge assigned the license application was presiding over the criminal proceeding. The prosecutor summarized the charges, and asserted an investigation revealed that firearms safety procedures under Stabile's management were lax; live ammunition was routinely kept in the same place as the blanks the untrained actors loaded into their operable firearms; and "Mr. Stabile hid the bullets from law enforcement officers investigating the shooting."

The grand jury had also indicted Cheyenne Corporation, which owned the land under the theme park, and WWI, which operated Wild West City at the time of the shooting. The prosecutor noted that both entities had been dissolved into a new entity named Cayuse LLC, which Stabile owned. The

prosecutor urged that "[t]o the extent Cayuse, LLC presently has a retail license, that license should be revoked." Attached to the letter were the criminal complaints and indictment against Stabile, Cheyenne and WWI; and corporate documents pertaining to Cheyenne, WWI and Cayuse LLC. The letter was sent to the State Police Firearms Investigation Unit and Robert Gluck, WWI's and Cheyenne's attorney, but not to Stabile or his attorney.

On September 30, 2010, the judge conducted an ex parte telephonic and in-person hearing, on the record, on Cayuse's application. Only Gluck and a different assistant prosecutor appeared. Gluck made it clear he did not represent Cayuse or Stabile. Neither Stabile nor any representative of Cayuse participated in the hearing. Stabile contends on appeal that he was not given notice of the hearing. The State does not contest that contention.[3]

At the hearing, the court did not admit evidence or hear argument. The judge noted he had read the prosecutor's letter. The judge assumed the State had the burden to establish reasons to deny the application, which he found was met based on the pending charges against Stabile and Cayuse. The judge denied

---

[3] We note that the assistant prosecutor asserted at the end of the hearing, after Gluck had already signed off, that Stabile "didn't want to be here." However, there is no evidence of prior written notice to him, or an effort to reach him by telephone.

the application, but stated Cayuse was entitled to a de novo hearing. The judge referenced In re Sportsman's Rendezvous Retail Firearms Dealer's License, 374 N.J. Super. 565, 581-82 (App. Div. 2005), in which a trial judge summarily denied a license application and thereafter held a de novo hearing. The judge explained, "[I]f I deny this, this gets back to [Stabile], then he can, I guess, pursue whatever he wishes to pursue."

On October 13, 2010, the State Police advised Stabile by fax that his application was denied and that he could request a hearing in Superior Court within thirty days of the denial. Stabile was advised he was not permitted to conduct retail firearms business after the prior license expired.

On October 14, 2010, Stabile wrote to the court requesting a hearing. He also asked whether he should be represented by counsel at the hearing, whether he should file papers in advance, and if the hearing would be before the same judge. Having received no response, Stabile mailed another copy of his letter on October 31, 2010, adding a post-script requesting that court staff contact him regarding a hearing. License 2530 expired on October 4, 2010.

Stabile took no further action until January 2012, when he was informed by a federal Alcohol Tobacco and Firearms inspector that License 2530 had expired. Stabile then contacted the State

Police and the court, contending that he had timely requested a hearing and that, because no hearing had been scheduled, his license renewal should automatically be approved.

After multiple letters and phone calls between Stabile and court staff, the court scheduled a hearing for March 2, 2012, for "Firearms Appeal: Denial of Retail License Renewal." On February 22, 2012, Stabile received written notice of the hearing. However, he decided to pursue an appeal with this court. On March 1, 2012, he informed the Law Division he would not attend the hearing.

The March 2012 hearing proceeded without Stabile. An assistant prosecutor appeared, but did not introduce evidence. The judge summarized the history of the application. He noted that, consistent with Sportsman's, the applicant was entitled to a plenary hearing, but he rejected the contention that the license should automatically be renewed because the court did not conduct a timely hearing. As for the merits, the court found it would be inappropriate to grant the application while the criminal charges against Stabile were pending.[4] On March 12, 2012, the judge issued an order stating, "the Applicant's appeal of the Court's previous denial is dismissed based on the pending

_____

[4] In 2011, the court dismissed two of the charges against Stabile with the State's consent, but most of them remained.

indictable charges against the Applicant . . . as well as the Applicant's failure to appear for the requested plenary hearing."

The indictment was thereafter dismissed as to Stabile. However, on April 11, 2012, WWI entered a conditional plea of guilty through Stabile to unlawful possession of a handgun, N.J.S.A. 2C:39-5(b). Stabile stated in his allocution that WWI provided operable handguns to the actors and, to the corporation's knowledge, they did not have carry permits. WWI retained the right to appeal the limited question whether a carry permit was required by the actors in the skit. That appeal was dismissed in September 2015 upon WWI's request.

## II.

On behalf of Cayuse, Stabile appeals from the March 12, 2012 order.[5] He argues the court's denial in September 2010 violated his right to due process, because the hearing was held without notice and an opportunity to be heard. He claims he satisfied the prerequisites for a license, and the unproved allegations of the indictment were an insufficient basis to deny

---

[5] Although Stabile appeared pro se before the trial court, Cayuse was required to obtain counsel on appeal. R. 1:21-1(c).

licensure.[6]  Stabile adds that the indictment was dismissed as to him.

Stabile also defends his decision to absent himself from the plenary hearing.  He contends his right to appeal to this court ripened after the trial court's denial in September 2010. He argues he "attempted to invoke this right as soon as he learned, in January 2012, that his license had been denied." Stabile also states he did not attend the March 2012 hearing to avoid prejudicing his pending criminal case.

The State responds that the judge properly denied the license application, relying on investigation reports related to the July 2006 shooting incident.  However, these documents were not in the record before the trial court.  The State also relies on Stabile's admissions in entering WWI's plea on April 11, 2012.  The State contends that even if there were procedural errors in the application process, they do not compel automatic licensure.  The State argues that denial was appropriate given Stabile's failure to appear at the March 2012 hearing.

---

[6] His appendix includes various documents not of record before the trial court, including corporate documents, grand jury transcripts, investigatory records related to the shooting, and evidence of prior inspections of Wild West City.

We defer to a trial court's fact findings if supported by substantial credible evidence. In re Return of Weapons to J.W.D., 149 N.J. 108, 116-17 (1997). However, we owe no deference to the trial court's legal conclusions, including its interpretation of N.J.S.A. 2C:58-2. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995); see also In re Pantano, 429 N.J. Super. 478, 483 (App. Div. 2013), certif. dismissed as improvidently granted, ___ N.J. ___ (2014).

A.

We begin by reviewing the statute. N.J.S.A. 2C:58-2(a) prohibits retail dealers from selling firearms "unless licensed to do so." To obtain a license, applicants must apply to the Superior Court using a standard form prescribed by the State Police Superintendent. Ibid. The judge "shall grant a license" if he or she finds "the applicant meets the standards and qualifications established by the superintendent and that the applicant can be permitted to engage in business as a retail dealer of firearms . . . without any danger to the public safety, health and welfare." Ibid. Anyone who is under twenty-one years old, or who would not qualify for a permit to purchase a handgun or a firearms purchaser identification card (FPIC), is ineligible for a retail dealer license. Ibid. Licenses are

subject to various administrative and recordkeeping conditions. <u>Ibid.</u> Breach of a condition is grounds for revocation, after notice and a hearing. <u>Ibid.</u>

Regulations promulgated by the State Police clarify that the application form is first submitted to the State Police, which forwards the application to the court. <u>N.J.A.C.</u> 13:54-3.3(b). "The Superintendent shall cause the applicant . . . to be investigated for purposes of providing the judge . . . with such information as the Superintendent deems appropriate . . . ." <u>N.J.A.C.</u> 13:54-3.7. State Police may also conduct criminal and mental health records checks. <u>N.J.A.C.</u> 13:54-3.3. <u>N.J.A.C.</u> 13:54-3.4 sets forth "standards and qualifications" that essentially mirror the statutory requirements. <u>N.J.A.C.</u> 13:54-3.7 largely restates the statutory standards governing the court's determination. Renewal applicants must meet the same requirements as initial applicants and, with minor exceptions, follow the same procedures. <u>N.J.A.C.</u> 13:54-3.10. Any person "denied approval by a Superior Court judge . . . may file an appeal in accordance with law." <u>N.J.A.C.</u> 13:54-3.18(a).

B.

We discern no basis in the statute or the Rules of Court for a court to decide a contested application ex parte, and then allow an unsuccessful applicant to seek de novo review by the

11

same judge. We hold that a court should ordinarily conduct a hearing on the record, with notice to the applicant, on a contested application under N.J.S.A. 2C:58-2. An evidentiary hearing is required if there are genuine issues of material fact. If the application is unopposed, however, a hearing is not required, unless the judge sua sponte discerns issues of concern or grounds to reject the application. These rules are necessary to preserve the judicial nature of proceedings under N.J.S.A. 2C:58-2.

In authorizing a judge to decide an applicant's eligibility for licensure, we presume the Legislature intended the process to conform with that typical of judicial determinations. The Supreme Court has recognized that when the Legislature delegates nonjudicial duties to the judiciary — including deciding firearms-related licenses — it does not intend to alter the nature of judicial action. See Massett Bldg. Co. v. Bennett, 4 N.J. 53, 60-61 (1950). Rather, the delegation "reflects an intent of the Legislature to seek an impartial and independent tribunal for the decision of matters deemed vital to the welfare of the community." Id. at 61. In a contested matter, that implicates notice and an opportunity to be heard.

Rule 1:2-1 requires that hearings "be conducted in open court, unless otherwise provided by rule or statute." "[E]xcept

in unusual circumstances, a trial court should not communicate ex parte with a party or witness, even with the parties' consent." In re Dubov, 410 N.J. Super. 190, 201 (2009). These are fundamental principles. See Code of Judicial Conduct, Canon 3(A)(6) ("A judge should accord to every person who is legally interested in a proceeding, or that person's lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding."). Indeed, due process mandates the hearing requirement of Rule 1:2-1. Dubov, supra, 410 N.J. Super. at 201.

We also presume that, as with other licensing proceedings, the Legislature intended the judge's decision on a contested application to be based on competent evidence. In Weston v. State, 60 N.J. 36, 43-46 (1972), our Court discussed the procedural protections for applicants for FPICs. A police chief is authorized to grant or deny an application ex parte. Id. at 43-44. Given the informality of the chief's initial decision, an evidentiary hearing is required when an applicant appeals a denial to the Law Division. Id. at 44-45. At the hearing, the judge may admit hearsay, but "a residuum of legal and competent evidence in the record" must support the court's decision. Id. at 51.

In light of these principles, the process used in this case, which involved a contested application, was deficient. Cayuse was not given an opportunity to participate in the initial ex parte hearing, but the assistant prosecutor, who contested the application, was. The court should not have relied on the prosecutor's letter, as it was not served on Stabile.[7] An "appeal" to the same judge does not cure these deficiencies. Although denominated an "appeal," the second-round hearing differs from an appeal because the judge who hears the "appeal" has previously ruled against the applicant on the same issue. The applicant may feel the court has already made up its mind on the matter. The process is also unlike a motion for reconsideration, where the initial order is entered after notice and an opportunity to be heard.

We recognize the trial judge followed the two-stage procedure utilized in Sportsman's, supra, where the trial court summarily denied a renewal application based on the State Police's recommendation; the applicant "appealed" the denial; and the court conducted a de novo plenary hearing with the applicant's full participation. 374 N.J. Super. at 571. On appeal, the panel held this procedure was not reversible error,

---

[7] The court also should have marked the prosecutor's letter as an exhibit, R. 1:2-3, and entered a formal order embodying its decision, R. 1:6-2(f).

as the applicant was afforded a de novo hearing at which both sides presented witnesses and documentary evidence. Id. at 581-82. We decline to read Sportsman's to establish this two-stage procedure as the default mechanism for deciding applications under N.J.S.A. 2C:58-2.[8]

Furthermore, in denying Cayuse's application, the court relied on unproved allegations in an indictment. A decision on an application under N.J.S.A. 2C:58-2 must be based on competent evidence, which may include hearsay if it is corroborative. See Weston, supra, 60 N.J. at 51. A pending criminal charge, standing alone, is not competent evidence. To rely on facts underlying pending criminal charges, the State must present competent evidence to establish those facts. See In re Osworth, 365 N.J. Super. 72, 78 (App. Div. 2003) (dismissal of criminal charges does not bar court from considering underlying facts in deciding application under N.J.S.A. 2C:58-3). But a court may not rely on unproved allegations in an indictment. See In re Kollman, 210 N.J. 557, 576 (2012) (in expungement cases, court

_____

[8] Although the panel analogized the ex parte denial of the application to the ex parte issuance of a temporary restraining order (TRO), id. at 581, an ex parte TRO may only be granted upon a showing of emergent circumstances, see R. 4:52-1(a), which are not present in license applications. Moreover, a TRO is by definition temporary, while an ex parte license denial is final unless the applicant takes a further "appeal."

"may only consider established or undisputed facts, not unproved allegations").

Accordingly, we conclude the court should not have decided Cayuse's application ex parte without affording the applicant notice and an opportunity to be heard. Allowing the applicant to "appeal" to the same judge did not cure this deficiency.

C.

In outlining the proper procedure for considering retail dealer license applications, we must also address allocation of the burden of proof. After reviewing the statutory text and discussing general principles of burden allocation, we conclude that an applicant bears the burden to prove the eligibility requirements of N.J.S.A. 2C:58-2 are met.

N.J.S.A. 2C:58-2 generally prohibits the retail sale of firearms unless the dealer holds a retail firearms dealer license. The court "shall grant a license" if it finds "that the applicant meets the standards and qualifications established by the superintendent and that the applicant can . . . engage in business as a retail dealer of firearms . . . without any danger to the public safety, health and welfare." Ibid. The statute also provides that a license "shall [not] be granted" if an applicant is under twenty-one or would not qualify for a purchase permit or FPIC. Ibid. Thus, the statute does not

<u>require</u> issuance unless grounds for denial are presented; rather, it <u>authorizes</u> issuance only if the court finds these two positive criteria are met, and there are no disqualifying facts.[9]

We have held that similar language in <u>N.J.S.A.</u> 2C:58-4, which governs carry permits, puts the burden on the applicant to prove his eligibility for a permit. That section provides, in relevant part:

> The court shall issue the permit to the applicant if, but only if, it is satisfied that the applicant is a person of good character who is not subject to any of the disabilities set forth in section 2C:58-3c., that he is thoroughly familiar with the safe handling and use of handguns, and that he has a justifiable need to carry a handgun.
>
> [<u>N.J.S.A.</u> 2C:58-4(d).]

In <u>In re Wheeler</u>, 433 <u>N.J. Super.</u> 560, 575, 580-82 (App. Div. 2013), we held that an applicant bears the burden of proving all three requirements listed above:

> An applicant for a carry permit must demonstrate more than absence of a disqualifying condition. The applicant must show that he or she is "thoroughly familiar with the safe handling and use of handguns" <u>and</u> that he or she has "a justifiable need to carry a handgun."
>
> [<u>Id.</u> at 575 (quoting <u>N.J.S.A.</u> 2C:58-4(d) (emphasis in original).]

---

[9] The applicant's age and eligibility for a purchase permit or FPIC are not at issue in this case.

We also held in Pantano, supra, that the applicant bears the burden of proving "justifiable need." 429 N.J. Super. at 483-84 (citing In re Preis, 118 N.J. 564, 571 (1990); Siccardi v. State, 59 N.J. 545, 557 (1971)).[10]

We see no reason to depart from this burden allocation when construing similar text in N.J.S.A. 2C:58-2. Both N.J.S.A. 2C:58-2 and N.J.S.A. 2C:58-4 provide, in essence, that the court shall grant the license or permit if it finds requisite facts. We construe these two sections together to resolve any uncertainty about the meaning of N.J.S.A. 2C:58-2(a). See J.W.D., supra, 149 N.J. at 115 ("Statutes in pari materia are to be construed together when helpful in resolving doubts or uncertainties and the ascertainment of legislative intent.").

Our interpretation is supported by more general principles of burden allocation. Absent a clear legislative direction, the allocation of the burden of proof is a procedural matter "normally reserved for the courts." In re Will of Smith, 108 N.J. 257, 264 (1987); see also Mercedes-Benz Credit Corp. v. Lotito, 328 N.J. Super. 491, 510 (App. Div.), certif. denied, 165 N.J. 137 (2000). Allocation of the burden of proof

---

[10] Although the burden rests on the State to prove grounds to deny an application under N.J.S.A. 2C:58-3, that statute creates a right to receive the permit or FPIC "unless good cause" for denial appears. See Weston, supra, 60 N.J. at 46.

> can vary depending on the type of proceedings, the comparative interests of the parties, the relative litigational strengths or weaknesses of the parties, the access of the parties to proof, and the objectives to be served by the evidence in the context of the particular proceeding.
>
> [Romano v. Kimmelman, 96 N.J. 66, 89 (1984).]

Our Court has recognized that "the party with greater expertise and access to relevant information should bear those evidentiary burdens." J.E. ex rel. G.E. v. State, 131 N.J. 552, 569-70 (1992). Under the Code of Criminal Justice, in which the retail dealer license statute is located, the burden to prove a fact that is not an element of an offense is borne by the party "whose interest or contention will be furthered if the finding should be made[,]" unless the Code otherwise provides. N.J.S.A. 2C:1-13(d).

The applicant should bear the burden of proving the eligibility requirements because he or she has greater access to facts demonstrating compliance. The applicant can best present information regarding his or her ability to deal with firearms safely. Cf. In re Kollman, 210 N.J. 557, 573 (2012) (burden is on petitioner to establish grounds for early pathway expungement in part because he or she "is uniquely qualified to demonstrate facts about his or her character"). And it is in the applicant's interest to establish eligibility for licensure.

<u>Cf.</u> <u>ibid.</u> (citing <u>N.J.S.A.</u> 2C:1-13(d)(1) and reasoning that burden of proving that expungement serves the public interest rests on petitioner because the finding "furthers the applicant's cause").

While the burden of proving entitlement to the license is always upon the applicant, we add that the State should generally bear the initial burden of producing evidence underlying its objection to the application. Requiring the State to inform the applicant of the perceived deficiencies in an application, and to produce relevant evidence, will expedite the hearing by ensuring that only the disputed issues are addressed. This is not inconsistent with the direction in <u>Weston</u>, <u>supra</u>, 60 <u>N.J.</u> at 46, that the hearing on a permit application under <u>N.J.S.A.</u> 2C:58-3 should begin with testimony of the applicant, followed by the police chief who bears the burden of proving the applicant is not qualified, and then any rebuttal testimony by the applicant. <u>See also</u> <u>In re Appeal of the Denial of the Application of Z.L.</u>, 440 <u>N.J. Super.</u> 351, 357 (App. Div.), <u>certif. denied</u>, 223 <u>N.J.</u> 280 (2015). Just as the party without the burden of persuasion must testify first in the hearing under <u>N.J.S.A.</u> 2C:58-3, the party without the burden of persuasion in a hearing under <u>N.J.S.A.</u> 2C:58-2 — the State — should generally go first.

In sum, the applicant bears the burden to prove he or she meets the "standards and qualifications" and can "engage in business . . . without any danger to the public safety, health and welfare." N.J.S.A. 2C:58-2. It is not the State's burden to prove the negative, although the State generally bears the burden of production.[11] The applicant must prove he or she has met the requirements by a preponderance of the evidence. See N.J.S.A. 2C:1-13(f).

IV.

As we have noted, the proceedings in this case did not comply with the procedure we have outlined.[12] Nonetheless, we disagree that Cayuse is entitled to an order granting it a retail dealer license. We rejected a similar argument in Dubov, supra, which involved an application for a FPIC under N.J.S.A. 2C:58-3. We held that the court's failure to conduct a timely hearing on a challenge of a police chief's denial did not entitle the applicant to "automatic approval of his application without showing that he complies with the statutory requirements

_____

[11] We recognize the panel in Sportsman's stated that the State bears the burden of proving the "any danger to public health, safety and welfare" element. 374 N.J. Super. at 573. But the panel did not discuss why the burden should rest with the State as it found that the burden was satisfied on the record evidence in that case. Id. at 576-79.

[12] We recognize that the court may have been guided by the panel's decision in Sportsman's.

for purchasing a firearm." 410 N.J. Super. at 198. As we stated in Dubov, we do not believe the Legislature intended that a person who has not established his entitlement to a license should obtain one because of a procedural oversight. See ibid. The burden of proving entitlement to a license rested with Cayuse.

It is too late to remand for a hearing that would comply with our opinion, as Stabile sought a three-year license that would expire in 2013. N.J.S.A. 2C:58-2(a). Thus, the application for a 2010-13 license is moot. See Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257-58 (App. Div. 2006) ("An issue is moot when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy.") (internal quotation marks and citation omitted).

However, the challenge to the denials is not moot. An applicant for a retail dealer license must disclose on the application form whether he has been denied a license in the past. The fact that the 2010 and 2012 denials may prejudice future applications by Cayuse or some other entity under Stabile's direction satisfies us that Stabile or Cayuse may suffer adverse consequences as a result of the denials. See N.J. Div. of Youth & Family Servs. v. A.P., 408 N.J. Super. 252, 261-62 (App. Div. 2009) (an appeal is not moot if a party may

22                                                        A-4229-11T2

still suffer adverse consequences as a result of the decision), certif. denied, 201 N.J. 153 (2010).

Accordingly, we are constrained to vacate the September 2010 and March 2012 orders. However, we shall not remand for a hearing on the 2010 application. Any new application for a retail dealer license shall be decided in accord with the process we have outlined. We express no opinion on the merits of such an application.

Reversed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION