**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4042-17T3

IN THE MATTER OF THE
APPLICATION FOR RETAIL
FIREARMS DEALER
LICENSE RENEWAL BY
CAYUSE, LLC, t/a WILD
WEST CITY – LICENSE #2530.
_____

Submitted March 18, 2019 – Decided April 1, 2019

Before Judges Sabatino, Haas and Sumners.

On appeal from Superior Court of New Jersey, Law Division, Sussex County.

Mary K. Stabile Benson, attorney for appellant Cayuse, LLC, t/a Wild West City, and Michael Stabile.

Francis A. Koch, Sussex County Prosecutor, attorney for respondent State of New Jersey (Shaina Brenner, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Appellant Cayuse, LLC, t/a Wild West City appeals from the Law Division's April 16, 2018 order denying its application for renewal of an expired retail firearms dealer license after a five-day plenary hearing.  We affirm.

The essential procedural history and background facts of this case are set forth in our previous opinion,[1] and we incorporate that discussion here by reference.  The parties are also fully familiar with the proceedings that followed our opinion and, therefore, only a brief summary is necessary here.

Michael Stabile is the sole owner, manager, and only member of Cayuse, LLC (Cayuse).  For a number of years, Stabile has operated a western theme park known as "Wild West City"[2] which, among other things, features reenactments of gunfights put on by Stabile's employees.  During this period, Stabile held retail firearms dealer licenses in his own name, and in the names of corporate entities he headed,[3] including one called Western World, Inc.

---

[1] In re Cayuse Corp., LLC, 445 N.J. Super. 80, 84-88 (App. Div. 2016).

[2] The theme park is located in Sussex County.

[3] These companies all traded as Wild West City.

A-4042-17T3

(Western).  The retail firearms business was located on the theme park's property.[4]

Stabile permitted his employees to use real handguns during their performances even though most, if not all, of these employees did not possess the required permit to legally carry a firearm under N.J.S.A. 2C:39-5(b).  Stabile provided some of these firearms to the employees, and claimed he was not aware that carry permits were required because he was operating a theme park.  Stabile testified that he had safety protocols in place that prohibited the employees from using live ammunition during their performances.  Instead, the employees were supposed to use "blanks."

These protocols were obviously not effective because, on July 7, 2006, one of the employees shot another worker in the head[5] while using a real handgun with live ammunition during a performance at the theme park.  As a result, a Sussex County grand jury returned a twenty-five count indictment

---

[4] The property where the gun dealer business and theme park were located was owned by another corporation, Cheyenne Corporation (Cheyenne), that was also managed by Stabile and other family members.

[5] The worker sustained a catastrophic brain injury, and was severely and permanently disabled.

A-4042-17T3

charging Stabile, Western, Cheyenne, and two other individuals with a number of criminal offenses, including unlawful possession of a firearm as the result of Stabile permitting his employees to carry handguns without a permit.[6]

Thereafter, Stabile formed Cayuse to take over operations from Western. In August 2010, he filed an application to renew Western's retail firearms dealer license and transfer it to Cayuse.[7] As discussed in our 2016 opinion, a Law Division judge denied the application on March 12, 2012 without first conducting a hearing. Cayuse, 445 N.J. Super. at 87-88. We vacated this order due to the judge's failure to hold a hearing, and stated that because the license had long since expired, Cayuse could file a new application for consideration in accordance with the review procedures we outlined in the opinion. Id. at 98.

On April 11, 2012, Western pled guilty to third-degree unlawful possession of a handgun in violation of N.J.S.A. 2C:39-5(b). Stabile executed the plea form, and also provided the plea allocation on Western's behalf. "Stabile stated in his allocution that [Western] provided operable handguns to [his employees] and, to the corporation's knowledge, they did not have carry

---

[6] This indictment was filed on June 5, 2008.

[7] The license was designated as License #2530.

A-4042-17T3

permits." Id. at 88.[8] The remaining charges against Stabile, Western, and Cheyenne were dismissed, and Western was sentenced to one year of probation.[9] Because Cayuse was now Western's successor in interest and alter ego, the sentencing judge required Cayuse to abide by all of the terms of probation imposed upon Western.

In April 2016, one month after our decision in Cayuse, Stabile filed an application to renew License #2530 to be held in the name of Cayuse.[10] In accordance with the procedures outlined in that opinion,[11] the application was first considered by Detective Michael Kassey and Lieutenant Glenn Ross of the New Jersey State Police. Following their investigation, the State Police

---

[8] At the licensing hearing that is the subject of the present appeal, Stabile repeated this same testimony.

[9] As part of its plea agreement, Western retained the right to appeal the trial court's denial of its motion to dismiss the unlawful possession of a handgun charge, based on Western's contention that workers at a theme park may carry real guns without the required permit. Western did file an appeal from its conviction under Docket No. A-3007-12, but later withdrew it.

[10] As noted in our decision, we anticipated that Stabile would file an application for a new license because License #2530 had expired in 2010. Cayuse, 445 N.J. Super. at 98. However, the State Police assigned the application a new number, License #4211, and processed it as a new application. Therefore, the trial judge properly rejected the State's claim at the hearing that the application should not be considered because Stabile mistakenly filed it as a renewal application.

[11] See Cayuse, 445 N.J. Super. at 89-90.

A-4042-17T3

recommended that the application be denied. Lieutenant Ross testified that based upon the serious shooting incident that occurred at the theme park and Western's conviction for permitting employees to carry handguns without a permit, Stabile, who was responsible for operations at the theme park and who now owned and managed Cayuse, had demonstrated that he could not "engage in business as a retail dealer of firearms . . . without any danger to the public safety, health and welfare" under N.J.S.A. 2C:58-2(a).

After Detective Kassey and Lieutenant Ross testified at the hearing about their investigation, Stabile took the stand as Cayuse's only witness. As noted above, Stabile testified about his role in managing Western leading up to the 2006 shooting and, as the trial court found in its oral decision at the conclusion of the hearing, Stabile was aptly described as "the 'chief, cook, and bottle washer'" at Western because he was "in charge of the whole enterprise on a day-to-day basis." This included the retail firearms business and the theme park.

Stabile did not dispute that he permitted employees to carry and use real handguns during the simulated gun fights. The transcript of his plea allocution on behalf of Western was also admitted in evidence. In testifying on behalf of Western during that proceeding, Stabile admitted that handguns were distributed to Western's employees "to be used during reenactments and skits as part of the

day-to-day corporation's operations[.]" Stabile also stated that these handguns were given to employees on the day of the near-fatal shooting, even though it was known that the employees did not hold the permits required to carry handguns under N.J.S.A. 2C:39-5(b).

Stabile claimed that he had safety protocols in place that prohibited the use of live ammunition in the handguns that were distributed to the unpermitted employees. However, other than providing a "Wild West City Gun Safety Review" sheet[12] to his employees, and sometimes requiring them to participate in a "Gun Safety Seminar" on "handling, loading, unloading and proper discharge technique of revolvers and shotguns used" at the theme park, Stabile did not further identify or explain these protocols. Thus, for example, nothing in the record indicates that Stabile ever checked each employee's handgun prior to a performance to ensure it was properly loaded with blanks rather than live ammunition.

On the basis of these undisputed facts, Judge William J. McGovern, III rendered a comprehensive oral opinion denying Cayuse's application for a retail firearms dealer license. The judge found that Cayuse, through Stabile, failed to

---

[12] With regard to the use of live ammunition in the theme park, the safety review sheet stated, "NO REAL AMMO EVER! NOT EVEN LOCKED IN YOUR CAR!!"

demonstrate that it could engage in the business of selling and storing firearms "without any danger to the public safety, health and welfare" as required by N.J.S.A. 2C:58-2(a).

In this regard, Judge McGovern relied upon this court's seminal opinion in In re Sportsman's Rendezvous Retail Firearms Dealer's License, 374 N.J. Super. 565 (App. Div. 2005). In that case, the applicant had operated as a licensed firearms dealer for over ten years. Id. at 568. An investigation revealed that the applicant was unable to account for three firearms out of the 4300 sales it completed during that lengthy period. Id. at 574. The trial judge concluded that even one recordkeeping mistake of this nature was unacceptable given the highly regulated nature of the retail firearms industry, and denied the applicant's request for a license renewal. Id. at 574-75.

We affirmed the trial judge's decision. Id. at 567-68. In her oft-cited, and well-reasoned opinion on behalf of the court, our former colleague, Judge Francine Axelrad, explained that the focus under N.J.S.A. 2C:58-2(a) must be on whether the applicant could engage in the retail firearms business "without any danger to the public safety, health or welfare." Id. at 578. In this regard, the judge made crystal clear that

> the Legislature chose to use the adjective "any" in the . . . requirement for issuance of a license, i.e., if the

A-4042-17T3

judge finds the applicant can be permitted to engage in business as a retail dealer of firearms "without <u>any</u> danger to the public safety, health or welfare." N.J.S.A. 2C:58-2(a) (emphasis added). Considering the common-usage of "any" as "one or some, regardless of sort, quantity, or number," <u>Webster's II New College Dictionary</u>, 51 (1995), in the context of our State policy construing the licensing requirements to limit the availability of weapons, clearly suggests an intent by the Legislature to give this provision broad application.

[<u>Ibid.</u>]

Thus, Judge Axelrad held:

It is not acceptable for the applicant to demonstrate it can engage in the business of retailing firearms with little danger, some danger, or even minor danger; the standard is that it must operate without <u>any</u> danger. We find completely unavailing Sportsman's argument that because the three missing firearms have not turned up stolen, been linked to a crime, or recovered under dubious circumstances, they do not pose a danger to the public. "Any" danger includes potential danger.

[<u>Ibid.</u>]

Applying these same principles, Judge McGovern found that Cayuse and Stabile, as its owner, had not demonstrated that they could operate a retail firearms business without any danger to the public safety, health, or welfare in light of Stabile's utter lack of responsibility in the operation of the theme park on the same property. As Judge McGovern stated:

The message . . . from <u>Sportsman's</u> . . . is if you're a holder of a retail firearms dealer license, you better run a tight ship, you're expected to run a tight ship, and if you don't run a tight ship, you're potentially going to have your license revoked, or if you're filing for renewal, you're not going to get the license. And in this case, sad to say, back in 2006 at least, Mr. Stabile was not running a tight ship. . . . The policies and guidelines and safety procedures that were supposed to be in place were not being adhered to, and among other things, one or more individuals were using firearms at that time without having a permit to carry [them].

Judge McGovern further found that Western's conviction for violating the State's firearms laws was properly attributable to Cayuse as well because that new entity was the "substitute, alter[]ego" for Western, and stood "in the same shoes [as Western] at the same location, the same business, the same place, the same operation." In this regard, N.J.S.A. 2C:58-2(a) provides that

No license shall be granted to any retail dealer under the age of 21 years or to any employee of a retail dealer under the age of 18 or to any person who could not qualify to obtain a permit to purchase a handgun or a firearms purchaser identification card, or to any corporation, partnership or other business organization in which the actual or equitable controlling interest is held or possessed by such an ineligible person.

A-4042-17T3

"[A]ny person[13] who has been convicted of any crime" cannot obtain a handgun purchase permit or firearms purchaser identification card (FPIC). N.J.S.A. 2C:58-3(c)(1). Put differently, a criminal conviction of any crime will result in ineligibility for licensure as a retail firearms dealer under N.J.S.A. 2C:58-2.

Thus, because Western could not obtain a handgun purchase permit or an FPIC due to its conviction for allowing unpermitted individuals to illegally carry handguns, and Cayuse was the undisputed successor in interest to Western, the judge ruled that this disqualification was another reason to deny Cayuse's application. This appeal followed.

On appeal, Cayuse raises the following contentions:

POINT I

THE TRIAL COURT'S FACTUAL FINDINGS WERE ERRONEOUS AND WERE NOT BASED UPON SUFFICIENT, SUBSTANTIAL AND CREDIBLE EVIDENCE.

a. THE TRIAL COURT'S FACTUAL FINDINGS WERE BASED UPON UNRELIABLE HEARSAY WHICH WAS NOT SUPPORTED

---

[13] A "person," as defined by N.J.S.A. 1:1-2, "includes corporations, companies, associations, societies, firms, partnerships and joint stock companies, as well as individuals, unless restricted by the context to an individual as distinguished from a corporate entity."

A-4042-17T3

BY A RESIDUUM OF LEGALLY COMPETENT EVIDENCE.

b.    THE TRIAL COURT'S FACTUAL FINDINGS THAT MICHAEL STABILE WAS A DANGER TO THE PUBLIC HEALTH, SAFETY AND WELFARE WAS CLEARLY ERRONEOUS AND WAS NOT BASED UPON SUFFICIENT, SUBSTANTIAL OR CREDIBLE EVIDENCE.

c.    THE TRIAL COURT'S FACTUAL FINDINGS WERE CLEARLY ERRONEOUS AND WERE NOT BASED UPON SUFFICIENT, SUBSTANTIAL AND CREDIBLE EVIDENCE WHEN IT DETERMINED THAT CAYUSE AND CHEYENNE/WESTERN WORLD WERE ONE AND THE SAME AND THAT STABILE WAS THE CHIEF, COOK AND BOTTLE WASHER.

d.    THE TRIAL COURT'S FACTUAL FINDINGS WERE CLEARLY ERRONEOUS AND WERE NOT BASED UPON SUFFICIENT, SUBSTANTIAL AND CREDIBLE EVIDENCE WHEN IT DETERMINED THAT FILM AND MOVIE STANDARDS ARE DIFFERENT FROM WILD WEST CITY.

POINT II

THE TRIAL COURT'S INTERPRETATION AND APPLICATION OF THE LAW TO THE FACTS OF THIS CASE REQUIRE DE NOVO REVIEW.

a.    THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE CIVIL RESERVATION DID NOT APPLY TO THIS CASE.

b. THE TRIAL COURT COMMI[T]TED REVERSIBLE ERROR WHEN IT DETERMINED THAT THE CARRY PERMIT LAW APPLIES TO WILD WEST CITY.

c. THE TRIAL COURT ERRED IN ITS APPLICATION OF N.J.S.A. 2C:58-2(A) BECAUSE THE REQUIREMENTS OF THE STATUTE APPLY TO NATURAL PERSONS (RAISED BELOW BUT NEVER ADDRESSED BY THE COURT).

d. THE TRIAL COURT ERRED IN DETERMINING THAT IT DID NOT MATTER WHETHER [THE] SHOOTER WAS NEGLIGENT OR PURPOSEFUL.

POINT III

THE TRIAL COURT'S EVIDENTIARY RULINGS WERE INCONSISTENT WITH APPLICABLE LAW.

a. THE TRIAL COURT ERRED IN ALLOWING EVIDENCE AND TESTIMONY REGARDING THE JUDGMENT OF CONVICTION OF WESTERN WORLD IN LIGHT OF THE CIVIL RESERVATION.

b. THE COURT ERRED IN NOT CONSIDERING THE FACTS UNDERLYING THE GUILTY PLEA.

c. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ADMITTED AND RELIED UPON EVIDENCE PREVIOUSLY RULED INADMISSIBLE.

13

The scope of our review of Judge McGovern's determination on Cayuse's retail firearms dealer's application is limited. In general, "[f]inal determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review[.]" Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). "[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" In re Trust Created By Agreement Dated December 20, 1961, 194 N.J. 276, 284 (2008) (internal quotation marks omitted) (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974)); see also Cayuse, 445 N.J. Super. at 89. The court's findings of fact are "binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998); see also Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 397 (2009).

That said, we review rulings on pure questions of law de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1993); Sportsman's, 374 N.J. Super. at 575. However, findings that "may be regarded as mixed resolutions of law and fact" generally receive deference on appeal, with review "limited to determining whether there is sufficient credible evidence

14

in the record to support these findings." P.T. & L. Constr. Co. v. State, Dep't of Transp., 108 N.J. 539, 560 (1987).

Applying these well-established principles, we conclude that Judge McGovern's determinations are based upon findings that are adequately supported by the record, and Cayuse's arguments on appeal are without sufficient merit to warrant extended discussion in a formal opinion. R. 2:11-3(e)(1)(A) and (E). Therefore, we affirm the denial of Cayuse's application for a retail firearms dealer license essentially for the reasons set forth by Judge McGovern in his thoughtful oral opinion. We add the following comments.

Contrary to Cayuse's contentions, the record fully supports the judge's determination that Cayuse, under Stabile's supervision, was unable to establish that it could operate "as a retail dealer of firearms . . . without any danger to the public safety, health and welfare" as required by N.J.S.A. 2C:58-2(a). Indeed, there was no evidence pointing to a contrary conclusion.

Regardless of the specific corporate structure he operated under at any given time, Stabile was responsible for the day-to-day operations of the theme park and the retail firearms business.[14] In that position, Stabile handed out

---

[14] In this regard, the testimony revealed that Stabile was a shareholder and president of Western; a shareholder in Cheyenne, which owned the property on

handguns to employees who were not legally permitted to carry them. He also permitted employees to illegally carry their own firearms onto the premises. Although Stabile claimed that he had safety protocols in place, they obviously failed to prevent an employee from using a real firearm to shoot another employee with live ammunition in the theme park.

Stabile's inattention to firearm safety concerns was clearly more egregious than that exhibited by the unsuccessful applicant in Sportsman's. That dealer lost three handguns, but no evidence was presented that anyone was hurt as the result of this negligence. Sportsman's, 374 N.J. Super. 578. Nevertheless, Judge Axelrad found that the dealer's actions plainly placed the public in danger, and required the denial of the license application. Id. at 576. Here, Stabile's actions have already resulted in a near-fatal shooting at the theme park where the retail business is located. Under these circumstances, Judge McGovern's denial of the application was clearly appropriate.

This conclusion is further bolstered by Stabile's troubling failure to take responsibility for allowing unpermitted employees to illegally carry handguns on the property. He took the position at the hearing that there was little he could

which the businesses were located; and the sole managing member of Cayuse. All three of these businesses, as well as the Wild West City theme park, were registered at the same address, and Stabile lived on the property.

A-4042-17T3

have done to prevent the July 7, 2006 incident. However, the shooting could have easily been prevented had he not provided firearms to unpermitted individuals in the first instance.

Stabile's claim that he was unaware that his employees could not legally carry and use handguns on his property is also unavailing. "In the context of gun-control laws[,] courts have held that ignorance of the law is no defense to even a statute requiring that the defendant have 'knowingly' violated the law." In re Two Seized Firearms, 127 N.J. 84, 88 (1992).

The judge also correctly determined that Cayuse, as the alter ego of Western, was barred by the latter's conviction from obtaining a permit to purchase a handgun or a FPIC. N.J.S.A. 2C:58-3(c). This ruling was particularly appropriate in view of the fact that the sentencing judge in Western's criminal case required Cayuse to abide by all of the conditions of probation placed upon its predecessor as part of the sentence. Because Cayuse could not obtain a handgun purchase permit or a FPIC, the judge properly barred it from becoming a licensed retail firearms dealer under N.J.S.A. 2C:58-2(a).

We reject Cayuse's contention that the judge improperly based his decision on "uncorroborated hearsay" contained in Lieutenant Ross's report. First, it is well established that at a licensure hearing, "the judge may admit

17

hearsay, but 'a residuum of legal and competent evidence in the record' must support the court's decision." Cayuse, 445 N.J. Super. at 91 (quoting Weston v. State, 60 N.J. 36, 51 (1972)). As discussed above, there was ample testimony at the hearing from Stabile conceding that he was responsible for Western's failure to abide by this State's gun possession laws in connection with that company's conviction for violating N.J.S.A. 2C:39-5(b). In addition, the judge properly relied upon Stabile's plea allocation testimony and Western's judgment of conviction (JOC) itself which, under N.J.R.E. 803(c)(22), was plainly admissible in this hearing.

On this score, Cayuse asserts that the JOC should not have been entered in evidence because Western received a "civil reservation" under Rule 3:9-2 at the time it pled guilty to the illegal carrying charge. We disagree.

As a general rule, a guilty plea arising from a criminal proceeding is admissible as a statement of a party opponent under N.J.R.E. 803(b)(1). State v. McIntyre-Caufield, 455 N.J. Super. 1, 8 (App. Div. 2018) (citing Maida v. Kuskin, 221 N.J. 112, 125 (2015)). However, "[f]or good cause shown the court may, in accepting a plea of guilty, order that such plea not be evidential in any civil proceeding." R. 3:9-2.

The burden of establishing good cause is on the defendant. Maida, 221 N.J. at 123. New Jersey courts "have defined two examples of what constitutes good cause under Rule 3:9-2." McIntyre-Caufield, 455 N.J. Super. at 8. Good cause exists if a "no-civil-use agreement . . . is necessary to remove an obstacle to a defendant's pleading guilty to a criminal change" or if "the civil consequences of a plea may wreck devastating financial havoc on a defendant." Id. at 8-9 (first quoting State v. Haulaway, Inc., 257 N.J. Super. 506, 508 (App. Div. 1992); then quoting State v. Tsilimidos, 364 N.J. Super. 454, 459 (App. Div. 2003)).

In this case, Cayuse contends that the trial court erred when it allowed the State to introduce the JOC since a civil reservation had been granted to Western at sentencing. As a preliminary note, the civil reservation order does not appear in the record. Under the letter of the rule, the trial court grants a civil reservation by order. R. 3:9-2; see also Gallo Asphalt Co. v. Sagner, 71 N.J. 405, 408 (1976) ("Pursuant to R. 3:9-2, and with the consent of the prosecuting attorney, [the trial court] issued two orders prohibiting the use of the guilty pleas of the two companies as evidence . . . . ").

However, even assuming a civil reservation was granted, Judge McGovern did not abuse his discretion by admitting the JOC because a hearing to determine

19

whether a retail firearms dealer license should be granted is simply not the type of "civil proceeding" envisioned by the rule. See McIntyre-Caufield, 455 N.J. Super. at 8 (stating that "[t]he purpose of [Rule 3:9-2] is to avoid an unnecessary criminal trial of a defendant who fears that a civil claimant will later use [its] plea of guilty as a devastating admission of civil liability." (second alteration in original) (quoting Stone v. Police Dep't of Keyport, 191 N.J. Super. 554, 558 (App. Div. 1983))). This licensure case does not involve the imposition of civil liability, in contrast to a lawsuit by the employee who was shot in the 2006 incident.

Furthermore, N.J.S.A. 2C:58-2 and 2C:58-3 bar anyone with a criminal conviction from obtaining a retail firearms dealer license. Allowing Cayuse to rely on a civil reservation in this case would circumvent and undermine the comprehensive statutory scheme our State has established for firearms possession and licensing. See Application of Hart, 265 N.J. Super. 285, 288 (Law Div. 1993) ("Ownership of firearms and a criminal conviction do not mix." (citing N.J.S.A. 2C:58-3(c)(1))).

Cayuse's remaining arguments involve its attempts to collaterally attack Western's conviction for allowing unlicensed employees to illegally carry handguns on the property. Cayuse argues that Western reserved its right to

appeal its conviction by arguing that its employees were not required to possess carry permits because they were engaged in a "theatrical performance" or exhibition when they took part in the simulated gunfights in the theme park. See Rule 3:9-3(f) (stating that a defendant can "enter a conditional plea of guilty reserving on the record the right to appeal from the adverse determination of any specified pretrial motion").

This argument lacks merit. Although Western filed an appeal from its conviction, it later withdrew it. Thus, the JOC stands and was properly considered in this civil proceeding. See State v. Gonzalez, 142 N.J. 618, 633 (1995) (holding that "a judgment of conviction may not be collaterally attacked in an employee license revocation proceeding" because it undercut the Casino Control Act's[15] strong policy of maintaining the integrity of the casino industry).

Cayuse also alleges that the judge erred by barring it from introducing facts to attack Western's straightforward guilty plea, such as Stabile's claim in his appellate brief that the employee who shot the other worker did so deliberately after bringing ammunition to the theme park without his knowledge. However, it is well established that a "defendant cannot attack the sufficiency of the factual basis for his plea in the absence of an indication that he seeks to

---

[15] N.J.S.A. 5:12-1 to -233.

withdraw that negotiated plea and stand trial on all of the original charges against him." State v. Mitchell, 374 N.J. Super. 172, 175 (App. Div. 2005). Therefore, Judge McGovern did not err in limiting the scope of this licensing hearing to Cayuse's eligibility for a retail firearms dealer license pursuant to N.J.S.A. 2C:58-2 and N.J.S.A. 2C:58-3. See State v. McInerney, 450 N.J. Super. 509, 512 (App. Div. 2017) (recognizing that evidentiary rulings should be upheld on appeal unless "there has been a clear error of judgment" (quoting State v. J.A.C., 210 N.J. 281, 295 (2012))).

In sum, we discern no basis for disturbing Judge McGovern's well-supported determination that based upon Stabile's past actions and Western's conviction, Cayuse, as Stabile's new corporate identity, should not be licensed as a retail firearms dealer.[16]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[16] All other arguments raised in this appeal, to the extent we have not addressed them, are likewise without sufficient merit to be discussed. R. 2:11-3(e)(1)(E).

22

A-4042-17T3