**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5621-17T2

IN THE MATTER OF THE
APPLICATION FOR PERMIT
TO CARRY A HANDGUN OF
ELIOENAI FERNANDEZ.

_____

Argued September 17, 2019 – Decided October 2, 2019

Before Judges Yannotti and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Union County.

Elioenai Fernandez, appellant, argued the cause pro se.

Michele C. Buckley, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney; Reana Garcia, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Appellant Elioenai Fernandez appeals from a June 22, 2018 order denying his application for a permit to carry a handgun. The trial judge found it was against the public interest for appellant to obtain a carry permit because of a

previous disorderly persons plea and two dismissed charges.  See N.J.S.A. 2C:58-3(c)(5).  Because appellant explained that the criminal charges related to his prior employment as a "bounty hunter," and because all of the charges were either downgraded or dismissed, we reverse and remand the matter to the trial court for reconsideration and further proceedings on the petition.  On remand, the court should conduct an evidentiary hearing, review the facts and circumstances of the criminal charges and their dispositions, and assess defendant's credibility.  The court should also evaluate and make specific findings on whether appellant has established the justifiable need for the carry permit.

Appellant submitted an application for a permit to carry a handgun.  He asserted he had accepted employment with GDNJ Protective Services, LLC (GDNJ) as an armed security officer and required a handgun for his employment. The letter provided by GDNJ in support of the application advised that appellant's contract required him to carry a handgun because appellant was "subject to a substantial threat of serious bodily harm" when performing his duties.  GDNJ's employees work as armed cash couriers, armed payroll escorts, and armed bank guards, and provide services as special protectors of individuals and transporters of valuables.

The letter explained some GDNJ clients had experienced armed robberies, shopliftings, issues with disgruntled employees and fights at their workplaces. Because of those incidents, the clients employed GDNJ guards. The letter detailed one example of an assignment where guards were needed to protect individuals who repair ATM machines. To perform such repairs, the ATM machine is opened, exposing sizeable amounts of currency. The guard is needed to protect the technician from being hurt or robbed. Appellant's position as an armed guard was contingent on his obtaining a handgun carry permit.

In its review of appellant's application, the Rahway Police Department conducted a criminal background check. The federal and state criminal history checks were devoid of any felony convictions. As revealed by appellant, he had two arrests in Pennsylvania in 1997. Both arrests occurred in the course of his employment as a bail bonds agent. In each instance, the individuals he sought to return to New Jersey as fugitives signed complaints against him. Appellant stated he pled guilty to one disorderly persons charge and paid a fine. The remaining charges were dismissed.

Appellant stated, that in 2011, after he arrested someone in Puerto Rico during the course of his employment, a civilian signed a complaint against him

for kidnapping. The charge was dismissed for lacking probable cause and later expunged. Appellant provided all of the documentation to the Rahway police.

Although there was no record of any additional incidents, appellant affirmatively noted on his application a disorderly persons summons issued by a civilian in Woodbridge in 2003. In circumstances similar to the prior charges, the civilian complaint was filed after appellant arrested a fugitive while employed as a bail bondsman. The summons was dismissed by the court. Woodbridge police advised, in its supplemental investigation report, there was no record of the incident.

The Rahway Police recommended approval of the application. Following a judicial review, the Law Division judge denied the application without a hearing. She stated she found "a pattern of concerning behavior starting in 1997," and referred to the incidents in 2003 and 2011. The judge concluded "it was against the public interest to allow the applicant to obtain a permit to carry," and denied the application.

Appellant contends on appeal that the trial judge accorded undue weight to his prior charges as they were either downgraded to disorderly persons offenses or dismissed and the three incidents occurred long ago. He also asserts each occurrence was incident to his employment.

A-5621-17T2

We recognize our scope of review of the trial court's decision in the denial of a handgun carry permit is limited. See In re Z.L., 440 N.J. Super. 351, 355 (App. Div. 2015). We "accept a trial court's findings of fact that are supported by substantial credible evidence." Ibid. (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 116-17 (1997)). However, our review of a trial court's legal conclusions does not require the same level of deference. See ibid.; see also In re N.J. Firearms Purchaser Identification Card by Z.K., 440 N.J. Super. 394, 397 (App. Div. 2015) (citing In re Sportsman's Rendezvous Retail Firearms Dealer's License, 374 N.J. Super. 565, 575 (App. Div. 2005)) (noting that an appellate court "review[s] a trial court's legal conclusions regarding firearms licenses de novo").

The acquisition of a permit to carry a gun in New Jersey is a highly-regulated process. The applicable statute requires that a handgun carry application be first "submitted to the chief police officer of the municipality in which the applicant resides . . . ." N.J.S.A. 2C:58-4(c).[1] The chief police officer should not approve the application unless the applicant demonstrates that "he is

---

[1] The trial court relied on N.J.S.A. 2C:58-3 to -4, as they existed on June 22, 2018. The statutes were subsequently amended, most recently in 2019. The amendments to the statutes were largely formalistic and do not affect the relevant legal analysis.

A-5621-17T2

not subject to any of the disabilities set forth in [N.J.S.A. 2C:58-3(c)], that he is thoroughly familiar with the safe handling and use of handguns, and that he has a justifiable need to carry a handgun." Ibid.

Following the police review, the application is presented to the "Superior Court of the county in which the applicant resides . . . ." N.J.S.A. 2C:58-4(d). "The court shall issue the permit to the applicant if, but only if, it is satisfied that the applicant is a person of good character[,]" not subject to any of the N.J.S.A. 2C:58-3(c) disqualifications, "that he is thoroughly familiar with the safe handling and use of handguns, and that he has a justifiable need to carry a handgun . . . ." Ibid.

N.J.S.A. 2C:58-3(c)(5) provides, in relevant part, that no handgun permit "shall be issued . . . [t]o any person where the issuance would not be in the interest of the public health, safety or welfare. . . ." Id. The statute enumerates multiple separate categories of disqualification from the right to a handgun permit or firearms purchaser identification card. See Z.L., 440 N.J. Super. at 356; N.J.S.A. 2C:58-3(c). However, section 58-3(c)(5) is "'intended to relate to cases of individual unfitness, where, though not dealt with in the specific statutory enumerations, the issuance of [a] permit . . . would nonetheless be contrary to the public interest.'" In re Osworth, 365 N.J. Super. 72, 79 (App.

Div. 2003) (quoting Burton v. Sills, 53 N.J. 86, 91 (1968)). Accordingly, "even though [an applicant] might not be disqualified from possessing a firearm under [another section], he may nonetheless be disqualified under [section 58-3(c)(5)] . . . ." In re Forfeiture of Pers. Weapons and Firearms Identification Card Belonging to F.M., 225 N.J. 487, 513 (2016).

A court's determination "that a defendant poses a threat to the public health, safety or welfare involves, by necessity, a fact-sensitive analysis." State v. Cordoma, 372 N.J. Super. 524, 535 (App. Div. 2004). This "requires a careful . . . assessment of the threat a defendant may impose to the general public." Ibid. Moreover, in considering section 58-3(c)(5) of the statute, "[t]he dismissal of criminal charges does not prevent a court from considering the underlying facts in deciding whether a person is entitled to purchase a firearm . . . ." Osworth, 365 N.J. Super. at 78 (citations omitted); accord Z.L., 440 N.J. Super. at 356 (citations omitted).

In his application, appellant informed of three incidents in which criminal charges were levied against him. The first of these events occurred twenty years ago; the last was more than six years ago. None of the charges resulted in a criminal conviction. Appellant pled guilty to a disorderly persons offense and paid a fine regarding the 1997 charge. The two more recent charges were

dismissed in court. It was uncontroverted that the charges all arose from complaints filed against appellant stemming from the performance of his duties as a bail bonds agent.

Although we agree a trial judge may consider the factual underpinnings of an applicant's dismissed charges when reviewing an application to carry a handgun, Osworth, 365 N.J. Super. at 78, the judge erred by finding, based on this record, that the three incidents demonstrated a "concerning pattern of behavior."

In Osworth, the applicant did not advise the police of his arrest for weapons offenses incurred during the pendency of his carry permit application. The police chief denied the application. Because the applicant had successfully completed a pretrial intervention program and the charges were dismissed, the Law Division judge reversed the denial. In our reversal of the trial judge, we stated,

> Since Osworth's application for a permit to carry a handgun was pending when he was arrested, we infer that his violation of the law against carrying without a permit was intentional. Since a criminal conviction for either of th[e] offenses would be an automatic bar to obtaining a permit to purchase a handgun, N.J.S.A. 2C:58- 3c(1), the fact of their commission, even absent conviction, warranted denial of the permit in this case under subsection c(5). In short, it does not serve public safety to issue a handgun purchase permit to someone

who has demonstrated his willingness to disregard the gun laws of this State.

[Id. at 81.]

We are unconvinced that Osworth requires a denial of the carry permit in this case. Here, appellant's charges were either downgraded or dismissed. They were incurred between six and twenty years prior to the submission of his application. Appellant has explained the charges were all related to his job as a bail bondsman where his encounters with fugitives resulted in the filing of criminal complaints against him.

Without a hearing, the trial judge was not fully apprised of the circumstances that led to appellant's criminal charges nor was she able to assess appellant's credibility. The judge also did not address whether appellant demonstrated the requisite need required under N.J.S.A. 2C:58-4(c) for a carry permit. Therefore, on remand, the judge should consider GDNJ's letter and any other information or testimony appellant may present regarding his need to carry a handgun during his employment.

Because of the unique circumstances underlying appellant's prior criminal history, we remand for a hearing, thus allowing appellant the opportunity to further explain the criminal charges and for the judge to assess appellant's

9

credibility prior to a determination of whether appellant "poses a threat to the public health, safety or welfare."

Reversed and remanded for proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5621-17T2