**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0545-19

IN THE MATTER OF THE
APPEAL OF THE DENIAL OF
D.P.'S APPLICATION FOR A
FIREARMS PURCHASER
IDENTIFICATION CARD AND
A HANDGUN PURCHASE
PERMIT.

_____

Argued April 12, 2021 – Decided May 3, 2021

Before Judges Fasciale and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. GM-2018-61.

Stephen F. Pellino argued the cause for appellant (Basile Birchwale & Pellino, LLP, attorneys; Stephen F. Pellino, on the briefs).

William P. Miller argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; William P. Miller, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

D.P.[1] appeals from a September 6, 2019 order upholding a municipal police chief's denial of his application for a New Jersey Firearms Purchaser Identification Card (FPIC) and a handgun purchase permit (HPP). We affirm for the cogent reasons placed on the record by Judge Christopher R. Kazlau on September 6, 2019.

The facts are taken from the hearing testimony before Judge Kazlau on three non-consecutive dates.

In April 2017, D.P. filed an application for an FPIC and HPP with the Saddle River Police Department. The Saddle River police chief denied the application in an August 21, 2018 letter based on D.P.'s history of mental health issues.

D.P. appealed the police chief's denial of his application. In an October 16, 2018 letter to the court, the Bergen County Prosecutor's Office advised it had no objection to the application.

By way of background, D.P.'s father was absent from his life and his mother had substance abuse issues. As a result, D.P. lived with his great-grandmother from birth until his great-grandmother's death in 2009. After the

---

[1] We use appellant's initials as this matter is sealed in accordance with Rule 1:38-11(b)(2).

death of his great-grandmother, D.P. lived with his mother until he reached eighteen-years of age.

D.P. retained two experts to evaluate him and render written reports in support of the FPIC and HPP application.[2] According to D.P.'s experts, as a child, D.P. had anger issues, acted out, and skipped school.

At age nine, D.P. refused to attend school and threatened his great-grandmother with a butter knife. Consequently, D.P.'s great-grandmother contacted the Bergen County Regional Medical Center's mobile crisis unit. D.P. was taken to the hospital and placed under observation for two hours. Upon his release from the hospital, the attending doctors recommended D.P. receive outpatient mental health therapy based on a diagnosis of depressive disorder not otherwise specified and impulse control disorder not otherwise specified. D.P. attended outpatient mental health therapy at Bergen County Regional Medical Center from age nine through age thirteen.

In 2017, when he was twenty-one years old, D.P. filed an application for an FPIC and HPP. The application contained two questions related to mental health treatment. Question twenty-four of the application asked, "Have you ever

---

[2] One expert was a licensed psychologist, and the other expert was licensed psychiatrist. In addition to testifying, both experts submitted written reports in support of D.P.'s application.

A-0545-19

been confined or committed to a mental institution or hospital for treatment or observation of a mental or psychiatric condition on a temporary, interim, or permanent basis?" Question twenty-six asked, "Have you ever been attended, treated or observed by any doctor or psychiatrist or at any hospital or mental institution on an inpatient or outpatient basis for any mental or psychiatric condition?" D.P. answered "No" to both questions.

D.P. submitted the completed application to the Saddle River Police Department. As part of its routine investigation of all FPIC and HPP applications, the Saddle River Police Department obtained information regarding D.P.'s mental health treatment with Bergen County Regional Medical Center. Based on the hospital records, the investigating officer suggested D.P. obtain a certificate from a medical doctor certifying that he no longer suffered from any mental health condition. However, D.P. failed to obtain an evaluation from a psychiatrist or medical doctor providing a psychological evaluation only. As a result, the investigating officer recommended denying D.P.'s application. The Saddle River police chief accepted the recommendation and denied the application.

In appealing the denial of his application to the Superior Court, D.P. presented the testimony and written reports of his two experts. The expert

A-0545-19

psychiatrist concluded the treatment D.P. received between the ages of nine and thirteen was not directed at treating a mental disorder. Rather, the treatment addressed D.P.'s anger and anxiety at that time. The psychiatric expert testified D.P. displayed no evidence of an active mental disorder and his risk for violence was very low.

D.P. also testified before Judge Kazlau in support of his application. Explaining why he answered "No" to questions twenty-four and twenty-six on the application, D.P. stated his issues were behavioral and not mental. Therefore, D.P. believed the questions were inapplicable to him. D.P. denied responding to the questions in the negative based on any concern that such a response might adversely affect his application. D.P. further testified he knew his Bergen County Regional Medical Center records would be discovered by the investigating officer as part of the application review process.

In denying D.P.'s FPIC and HPP application, Judge Kazlau did not focus on D.P.'s past or present mental health condition. Rather, Judge Kazlau explained his concern was D.P.'s failure to disclose his mental health treatment as part of the application. In completing the application, D.P. denied any treatment for a mental health condition despite receiving outpatient psychiatric treatment from age nine to age thirteen or fourteen, a diagnosis of "depressive

A-0545-19

disorder," and prescription medications, including Prozac and other anti-depressant medications.

The judge concluded, "[B]ased upon the totality of the evidence[,] you didn't disclose it because perhaps you didn't think anybody would find out or you thought that because it was a long time ago and you were a child that maybe it wouldn't be relevant or that it shouldn't be relevant." At the time of his application, D.P. was twenty-one years old. Judge Kazlau found incredible D.P.'s testimony that he could not recall an extensive course of mental health treatment ten years earlier. The judge held "not only was this an extended course of [mental health] treatment overseen by a psychiatrist[,] we had other issues going on. Truancy, juvenile court matters, stealing a bike."

In denying D.P.'s application, Judge Kazlau stated,

> [I]t gives me great concern that you would not disclose the treatment. . . . Your non-disclosure, your failure to disclose, and I find that it was knowing, undermined your application. . . . That gives me a concern as to whether or not you . . . really have matured and whether or not you would abide by the law and safely own and possess a firearm.
>
> The questions are very clear on the application for the firearms purchaser identification card. You're a very bright young man. You're attending college. You've been doing many positive things. . . . You understood the questions. . . . I listened back to your testimony and I think you were trying to justify or trying to argue in a

6

way that those questions . . . really didn't apply to you.
I completely disagree.

Based on these factual findings, Judge Kazlau held because of D.P.'s "knowing falsification of [the] FPIC application, and that's [N.J.S.A.] 2C:58-3(c)(3) as well as [N.J.S.A.] 2C:58-3(c)(5), it would not be in the interest of the public health, safety and welfare that [his] appeal will be denied."

On appeal, D.P. raises the following arguments:

POINT I

> THE POLICE CHIEF DID NOT SUSTAIN HIS BURDEN TO PROVE GOOD CAUSE FOR THE DENIAL OF [D.P.]'S FPIC APPLICATION AND REQUEST FOR HANDGUN PURCHASE PERMIT.

POINT II

> THE TRIAL JUDGE'S DECISION TO DENY [D.P.'S] APPEAL BECAUSE OF KNOWING FALSIFICATION OF HIS APPLICATION WAS NOT SUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE.

We reject D.P.'s arguments and affirm for the reasons stated by Judge Kazlau. We add the following brief comments.

A denial of an application for an FPIC by a police chief is subject to a de novo review in the Law Division. In re Osworth, 365 N.J. Super. 72, 77 (App. Div. 2003) (citing Weston v. State, 60 N.J. 36, 45 (1972)). The State "has the

burden of proving the existence of good cause for the denial by a preponderance of the evidence." Osworth, 365 N.J. Super. at 77 (citing Weston, 60 N.J. at 48). Our review of "a trial court's legal conclusions regarding firearms licenses [is] de novo." In re N.J. Firearms Purchaser Identification Card by Z.K., 440 N.J. Super. 394, 397 (App. Div. 2015) (citing In re Sportsman's Rendezvous Retail Firearms Dealer's License, 374 N.J. Super. 565, 575 (App. Div. 2005)).

"[A] judicial declaration that a defendant poses a threat to the public health, safety or welfare involves, by necessity, a fact-sensitive analysis." State v. Cordoma, 372 N.J. Super. 524, 535 (App. Div. 2004). In reviewing such determinations, we accept the trial court's fact findings so long as they are supported by substantial credible evidence. In re Return of Weapons to J.W.D., 149 N.J. 108, 116-17 (1997). However, our review of the trial court's legal determinations is de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

An application for an FPIC and HPP is governed by N.J.S.A. 2C:58-3. The statute provides:

> No handgun purchase permit or firearms purchaser identification card shall be issued:
>
> . . . .

(3) . . . to any person who has ever been confined for a mental disorder, . . . unless any of the foregoing persons produces a certificate of a medical doctor or psychiatrist licensed in New Jersey, or other satisfactory proof, that he [or she] is no longer suffering from that particular disability in a manner that would interfere with or handicap him [or her] in the handling of firearms; to any person who knowingly falsifies any information on the application form for a handgun purchase permit or firearms purchaser identification card;

. . . .

(5) To any person where the issuance would not be in the interest of the public health, safety or welfare . . . .

[N.J.S.A. 2C:58-3(c)(3) and (5).]

Here, Judge Kazlau denied D.P.'s FPIC and HPP application, "despite the positive things that [D.P.'s] done," because "the fact remains that [D.P.] failed to disclose an extended period of mental health treatment that spanned a number of years from the time" he was age nine through age thirteen or fourteen. It was D.P.'s failure to disclose the required mental health information on his application that led to the judge's decision to uphold denial of the application based on public health, safety, and welfare concerns.

Based on our review of the record, Judge Kazlau followed the procedures for reviewing the police chief's denial of D.P.'s FPIC and HPP application, and his determination comported with statutory and decisional law. There is ample

9

credible evidence in the record supporting the judge's decision based on D.P.'s knowing lack of candor in completing his application requiring denial of the application under N.J.S.A. 2C:58-3(c)(3). In addition, D.P.'s failure to reveal the truth regarding his mental health treatment supported the judge's conclusion that "issuance [of the FPIC and HPP] would not be in the interest of the public health, safety or welfare." N.J.S.A. 2C:58-3(c)(5); see also Osworth, 365 N.J. Super. at 79 (holding in cases of individual unfitness, not specifically enumerated in the statute, the issuance of a permit or identification card should be denied as contrary to the public interest).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0545-19