**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1721-22

IN THE MATTER OF THE
REVOCATION OF ROBERT
SANDERS'S FIREARMS
PURCHASER IDENTIFICATION
CARD AND COMPELLING THE
SALE OF HIS FIREARMS.

_____

Submitted March 5, 2024 – Decided April 30, 2024

Before Judges Natali and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. GPR-0009-21.

The Tormey Law Firm, LLC, attorneys for appellant Robert Sanders (Travis J. Tormey, of counsel; Jeffrey Anthony Skiendziul, on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent State of New Jersey (William P. Miller, Assistant Prosecutor, of counsel; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Appellant Robert Sanders appeals from the Law Division's January 25, 2023 order revoking his firearms purchaser identification card (FPIC) and compelling the sale of his firearms. We affirm.

In September 2018, the Bergen County Prosecutor's Office Narcotics Task Force received information from a confidential informant that appellant was selling narcotics in Bergen County. A detective arranged for two separate controlled buys of Adderall and methadone pills from appellant; the first buy was $120 for eight Adderall and six methadone pills and the second was $160 for ten Adderall and eight methadone pills.

Appellant was subsequently arrested and charged with four counts of distribution of a controlled dangerous substance (CDS). His release from jail was conditioned on the surrender of his seven firearms to police. Appellant was admitted into the pretrial intervention program (PTI), N.J.S.A. 2C:43-12 to -22, and after he successfully completed one year of supervision, the charges against him were dismissed.

The forfeiture of appellant's firearms was not imposed as a condition of PTI. Instead, the State filed a motion to revoke appellant's FPIC and compel the sale of his firearms pursuant to N.J.S.A. 2C:58-3(f), which permits the county prosecutor to apply to the court for revocation of an FPIC when the holder

A-1721-22

becomes subject to a disqualifying disability under N.J.S.A. 2C:58-3(c).

Pertinent to this case, the statute provides:

> [A] person shall not be denied a permit to purchase a handgun or a firearms purchaser identification card, unless the person is known in the community in which the person lives as someone who has engaged in acts or made statements suggesting the person is likely to engage in conduct, other than justified self-defense, that would pose a danger to self or others, or is subject to any of the disabilities set forth in this section or other sections of this chapter. A handgun purchase permit or firearms purchaser identification card shall not be issued:
>
> . . .
>
> (3) To any person who suffers from a physical defect or disease which would make it unsafe for that person to handle firearms, to any person with a substance use disorder involving drugs as defined in [N.J.S.A. 2C:24-21-2], . . . unless any of the foregoing persons produces a certificate of a medical doctor, treatment provider, or psychiatrist licensed in New Jersey, or other satisfactory proof, that the person is no longer suffering from that particular disability in a manner that would interfere with or handicap that person in the handling of firearms; . . .
>
> . . .
>
> (5) To any person where the issuance would not be in the interest of the public health, safety or welfare because the person is found to be lacking the essential character of temperament necessary to be entrusted with a firearm.

A-1721-22

[N.J.S.A. 2C:58-3(c) (Dec. 2022).]

A hearing on the motion was held on January 20, 2023, before Judge Christopher R. Kazlau. At the time of the hearing, appellant was self-employed in the computer business for twenty-five years, where he set up and built computers. He had no prior indictable convictions or juvenile adjudications and no history of mental health commitments or in-patient treatment for substance abuse. Appellant had not been arrested since the 2018 CDS offenses and possessed his FPIC for twenty-three years in two different towns without any issues. He believed he was not a danger to the public, nor did he lack the essential character to be entrusted with a firearm.

The State cross-examined appellant about his prior criminal history, including a conviction in 1990 for theft by deception. Appellant's explanation of the offense was that, while he was having a party, someone else used his house phone to charge $225 to his neighbor's credit card. Appellant said he did not commit the offense and pleaded guilty to something he did not do because he "wanted it to go away." The State then produced appellant's sworn statement he provided to detectives at the time. In that statement, appellant admitted he saw his neighbor's mail in the street, opened it, and used the information from a bank statement to call a phone sex line. When questioned by the motion judge,

appellant maintained that he had been placed under oath, admitted to something he did not do and, by doing so, lied to the judge during his guilty plea.

Although appellant also had arrests for possession of marijuana in 1992 and criminal mischief in 1998, the judge did not afford these prior arrests any weight in his decision because they were remote and predated the issuance of appellant's FPIC.

Appellant presented a report dated June 2, 2021 from his treating psychiatrist, Dr. Joseph Siragusa, but did not produce him to testify. Dr. Siragusa documented appellant's prior history of alcohol and opioid abuse, diagnosed him with "unspecified anxiety disorder, history of adjustment disorder with mixed anxiety and depressed mood, as well as opioid-use disorder severe in full, sustained remission." However, Dr. Siragusa opined "[a]t no time has [appellant] demonstrated excessive anger or inability to control his impulses," nor did appellant suffer from any disability that would interfere with or handicap him in the handling of a firearm.

Despite his own treating psychiatrist's diagnosis, appellant repeatedly denied ever having a substance abuse problem. He testified he had sustained a fractured disc in his back so he was put on "medication." At the time of the

5

hearing, he had been taking Percocet four times a day, every day for more than five years.

Appellant recalled he was diagnosed with anxiety at some point after his parents took him to an emergency room in April 2016 because he was "feeling unwell." He had been treating with a psychiatrist since at least 2019 and was taking Xanax as needed for anxiety and to help him sleep, since he was in pain. Appellant estimated he took fifteen Xanax per week.

When asked about the two controlled buys of CDS in 2018, the details of which the investigating detective testified, appellant admitted to selling Adderall and methadone but offered an implausible explanation of why he did so. Appellant said he studied to be a certified alcohol and drug counselor and claimed he was only trying to help a friend who was addicted to pain medication by selling him methadone. The judge asked a few follow-up questions:

> Q:    Okay. Now, you testified on direct that you were studying to be a certified alcohol and drug counselor, and you were just trying to help out a friend?
>
> A:    Yeah.

    A-1721-22

Q: Why would you charge the friend for the drugs that you were getting him?

A: It was a friend's friend.

Q: So it was a friend's friend.

A: I had never met the person.

Q: And you stated that you were trying to—basically trying to help out and assess that person?

A: That is correct.

Q: So the way that you were going to do that was to sell—disregard the law and sell CDS to that person, that's the way you were going to help them?

A: I was going to help them by evaluating them and giving them a name of a psychiatrist so they could get medication to get off drugs.

Q: By selling drugs to them in exchange for money for yourself?

A: That's what happened.

Q: Is that what you did?

7

A: Yes.

After considering the testimony and evidence presented, Judge Kazlau granted the State's motion. In his oral decision on the record, the judge determined the detective's testimony to be "most credible, most direct, [and] consistent throughout." With regard to the CDS transactions, the judge found:

> It's not the fact of the arrest. It's not the fact of the disposition to PTI. It's the underlying conduct that I'm concerned about. And that underlying conduct in selling drugs in exchange for money—and quite frankly, I don't find [appellant]'s testimony to be credible at all regarding his intentions on selling the CDS that he was training to be a certified drug counselor and he was just trying to help out a friend.
>
> He changes that up later on upon questioning from the [c]ourt that he was trying to help out a friend of a friend, when I asked him, well, you know, you're going to help out a friend, you're going to do that in exchange for money, as though that would make it okay. I find his testimony regarding that to be incredible. I mean, it's clear, based upon the testimony before me from [appellant] and [the detective], who was intimately involved in the investigation that [appellant] was selling CDS for profit.
>
> Certainly, in evidence is the disregard for the law. The evidence is a disregard for the law that certainly causes harm to the community.
>
> But also in some ways the evidence is [appellant] . . . in some ways minimizing his conduct and almost trying to justify his conduct in disregarding the law in selling CDS.

8

The judge also found appellant was "trying to minimize the conduct" regarding his 1990 conviction for theft. While the judge acknowledged the conduct was remote in time and appellant had not had any issues with a firearm since obtaining his FPIC, he found it "relevant with respect to his demeanor throughout the course of his testimony." The judge recognized appellant suffered from anxiety, which could have impacted his demeanor in court, but noted he "displayed a palpably anxious demeanor throughout his testimony. At times, even coming across angry in his testimony and minimizing his conduct."

The judge also discussed his concerns about appellant's substance abuse when considering the totality of the evidence:

> [A]t the outset of his testimony . . . [counsel] asked [appellant] whether or not he's ever had a problem with substance abuse. And [appellant] denied that. Says he hasn't had a problem with substance abuse. Actually, even doubled down on it after I asked for some clarification and still maintains that.
>
> Quite frankly, given—when I view that denial that he's ever had a problem with substance abuse through the lens of the totality of the evidence, I simply don't find that credible. It's actually very concerning because it's completely contrary to the findings of his own psychiatrist who's treated him for a number of years, that being Dr. Siragusa.
>
> . . . At the request of [appellant] and his counsel, I admitted Dr. Siragusa's report 2021 psychiatric evaluation of [appellant] into evidence. And the

9

diagnostic impression of Dr. Siragusa in his report is unspecified anxiety disorder, history of adjustment disorder with mixed anxiety and depressed mood, and opioid-use disorder severe, in full sustained remission.

That is completely contrary to [appellant]'s own testimony. I infer from that that [appellant] remains and perhaps is in some level of denial of . . . either a current or a past substance-abuse disorder. And that . . . he would even offer and wants this [c]ourt to accept certain aspects of Dr. Siragusa's opinion, when [appellant] himself disagrees with one of the actual diagnoses of Dr. Siragusa I find to be quite remarkable.

The judge further discussed Dr. Siragusa's report:

I have other concerns about Dr. Siragusa's report. You know, quite frankly, I do not accept the opinion of Dr. Siragusa and his report. Let's make this clear. Dr. Siragusa was not called to testify as a witness. He wasn't placed under cross-examination so that his opinion, his findings, the basis for his opinion could be more fleshed out and examined by [the State] on cross-examination.

And I'm not obligated to accept the opinion of Dr. Siragusa that whatever psychiatric conditions that [appellant] suffers from or has suffered from in the past. I do not accept his opinion that there's nothing about those conditions presently that would not interfere with or handicap [appellant] in the safe handling of firearms presently.

Quite frankly, given the level of past psychiatric treatment, medication for anxiety disorder, adjustment disorder with mixed anxiety and depressed mood, the history of severe opioid-use disorder, the history of selling narcotics to an undercover officer as well as a

10

[confidential informant] on more than one occasion, it almost boggles my mind that the conclusion of Dr. Siragusa and the opinion of Dr. Siragusa is that it would be safe not only for the public.

. . . [M]y concern here, you know, isn't just the safety of others besides [appellant]. It's [appellant] himself.

After placing his findings on the record, the judge found the State had met its burden by a preponderance of the evidence and granted the motion to revoke appellant's FPIC and compel the sale of his firearms. This appeal follows.

"We review a trial court's legal conclusions regarding firearms licenses de novo." In re N.J. Firearms Purchaser Identification Card by Z.K., 440 N.J. Super. 394, 397 (App. Div. 2015) (citing In re Sportsman's Rendezvous Retail Firearms Dealer's License, 374 N.J. Super. 565, 575 (App. Div. 2005)).

However, our review of a trial court's factual findings on such matters is "limited." In re Z.L., 440 N.J. Super. 351, 355 (App. Div. 2015). "Ordinarily, an appellate court should accept a trial court's findings of fact that are supported by substantial credible evidence." In re Return of Weapons to J.W.D., 149 N.J. 108, 116 (1997) (citing Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 607 (1989)). We also defer to the trial judge's credibility findings. State v. Kuropchak, 221 N.J. 368, 382 (2015) (noting we "should defer to trial courts' credibility findings that are often influenced by matters such as observations of

the character and demeanor of witnesses and common human experience that are not transmitted by the record").

Appellant first contends the trial court erred by refusing to accept Dr. Siragusa's report as "satisfactory proof" that he is no longer suffering from a disability that would interfere with his handling of firearms, because the statute does not require live testimony. We disagree. A trial judge may accept or reject an expert report and weigh it appropriately. Maison v. N.J. Transit Corp., 460 N.J. Super. 222, 232 (App. Div. 2019); see also State v. S.N., 231 N.J. 497, 514 (2018) ("[R]egardless of whether the evidence is live testimony, a videotaped statement, or documentary evidence, deference is owed to the trial court's determinations of fact and credibility.") (citing State v. S.S., 229 N.J. 360, 379 (2017)). There may be instances where a judge may accept a psychiatric evaluation without having the doctor testify and be subject to cross-examination, but here the judge detailed his reasons for rejecting the report's conclusions, particularly in light of appellant's own testimony. We find no abuse of discretion in that decision.

Appellant next argues the judge erred by failing to make specific findings as to how appellant's past conduct presently reflects on his fitness for firearms ownership. We reject this argument as belied by the record. The judge fully

12

explained the serious concerns raised by appellant's current prescribed medication use and mental health issues and his denial of any substance abuse, which was "completely contrary to his own doctor." This lack of insight and appreciation for the seriousness of his conduct, along with his denial of a substance abuse disorder, amplified the judge's concern about appellant's "egregious disregard for the law that[ was] very recent." Thus, the record plainly reflects the judge's careful consideration of appellant's current mental health and wellbeing in light of his prior history.

Appellant also contends N.J.S.A. 2C:58-3(c)(5) is unconstitutionally vague, overbroad and violative of United States Supreme Court case law. We rejected this argument in In re M.U.'s Application for a Handgun Purchase Permit, 475 N.J. Super. 148 (App. Div. 2023), and discern no reason to deviate from our previous decision. We also find without merit appellant's contention this matter should be stayed pending resolution of the petition for certification in M.U. because he has not shown any of the requisite elements to justify a stay. See Garden State Equality v. Dow, 216 N.J. 314, 320 (2013); Crowe v. De Gioia, 90 N.J. 126, 132-34 (1982) (an applicant seeking a stay must demonstrate his claim rests on settled law and has a reasonable probability of succeeding on

the merits, the relief is needed to prevent irreparable harm, a balancing of the hardships favors relief, and the relief is consistent with the public interest.)

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-1721-22